Robert C. Moest (Bar No. 62166)
LAW OFFICES OF ROBERT C. MOEST
2530 Wilshire Blvd. 2nd Floor
Santa Monica, CA 90403
Tel:  (310) 915-6628
(310) 915-9897 (fax)
rmoest@aol.com

David M. Liberman (Bar No. 108469)
9709 Venice Blvd. No. 4
Los Angeles, CA 90034
Tel: (424) 298-8648
(310) 837-1056 (fax)
mightyarm@msn.com

Attorneys for Plaintiffs
Krishna Lunch of
Southern California, Inc., et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KRISHNA LUNCH OF SOUTHERN CALIFORNIA, INC., a California nonprofit religious corporation; RAJU MANTHENA, an Individual; SRINIVAS PRASAD, an Individual; NIKITA KATHURIA, an Individual; RAKSHA DUTT, an Individual; VIDORI VAIDE, an Individual; and  BRUCE ELLINGSON, an Individual,<br><br>                          Plaintiffs,<br><br>                vs.<br><br>MONROE GORDON JR., Interim Vice Chancellor of Student Affairs, in his official capacity,<br><br>                          Defendant.<br>_____ | Case No.  16-cv-8422-DSF-PLA<br><br><br><br>**THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

/ / /

/ / /

---

**1**
**THIRD AMENDED COMPLAINT**

1

## INTRODUCTION.

2   1.  This is a civil rights action for declaratory and injunctive relief pursuant

3   to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02.  Plaintiffs, Krishna Lunch of

4   Southern California, Inc. ("Krishna Lunch") and six full-time graduate and

5   undergraduate students at the University of California, Los Angeles ("UCLA" or

6   "University") as well as a full-time employee, challenge the abridgement of their

7   constitutional rights under the Free Exercise, Assembly/Association, and Free

8   Speech Clauses of the United States Constitution.

9   2.  Plaintiffs seek to hold a cultural program – known in the vernacular as

10  "Krishnas Lunch" – in the vicinity of the "Free Speech" area on the UCLA

11  campus.  In the context of this cultural presentation, plaintiffs wish to disseminate

12  their religious, philosophical, and ethical beliefs and teachings to members of the

13  UCLA community, including students, professors, administrators, and employees.

14  3.  The beliefs that plaintiffs seek to share with their "intended audience"

15  focus on the intricate relationship between religion, nature, and the environment.

16  Plaintiffs intend to share their beliefs on such topics as global warming and

17  climate change, vegetarianism, veganism, animal protection, God-centered

18  ecology, the relationship between science and religion, the origin of life and the

19  universe, and the Laws of Nature.

20  4.  Plaintiffs' program consists of several distinct yet interrelated modes of

21  communication and religious exercise: the display and distribution of religious

22  literature; speaking with interested persons; the display of signs depicting

23  reincarnation, transmigration of the soul, animal protection, and other topics

24  related to plaintiffs' religious beliefs; and chanting the names of God[1] and other

25  devotional hymns and songs.  All of these activities are essential to plaintiffs'

26

27  [1] Hare Krishna, Hare Krishna, Krishna Krishna, Hare Hare/Hare Rama, Hare

28  Rama, Hare Rama, Rama Rama, Hare Hare.

religious exercise, and serve to communicate various aspects of the Krishna consciousness religion to willing recipients.

5.   Another aspect of plaintiffs' program entails the distribution and sharing of sanctified vegetarian and vegan food.  This activity is a fundamental and central evangelical mandate of the Krishna consciousness religion, and is a form of religious worship as well communication.  The distribution and sharing of sanctified vegetarian and vegan food conveys an important message about the spiritual, environmental, and medical benefits of a vegetarian and/or vegan diet.

6.   The Krishna Lunch program is also a vital and efficacious way that plaintiffs are able to bring people together for the common purpose of advancing their shared message and goals.

7.   The defendant has threatened to cite or arrest the plaintiffs if they attempt to hold their religious and expressive program on campus without permission from the University.

8.   The defendant's threat is in furtherance of a policy that prohibits religious and cultural programs such as Krishna Lunch in the public access areas of the UCLA campus.  Specifically, defendant has promulgated a regulation and/or policy that restricts plaintiffs' religious and expressive program to four-days per annum, and subjects their program to an undefined and arbitrary permit fee.  The plaintiffs seek a declaration that the defendant's policy violates the Free Speech, Free Assembly and Association, and Free Exercise Clauses of the First Amendment, as made applicable to the States by the Fourteenth Amendment.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3)(civil rights). The claims arising under the California Constitution are within the supplemental jurisdiction of the Court. 28 U.S.C. § 1367.

/ / /

**THIRD AMENDED COMPLAINT**

10.  Venue is proper pursuant to 28 U.S.C. § 1391(b) since the cause of action arises within this district, and the plaintiffs and defendant resides within it.

## PARTIES

11.  Plaintiff Krishna Lunch of Southern California, Inc., is a California nonprofit, religious corporation.

12.  Plaintiffs Raju Manthena, Srinivas Prasad, Nitika Kathuria, Raksha Dutt, and Vidori Vaide are full time students at UCLA.

13.  Plaintiff Bruce Ellingson, is a full-time employee of UCLA Extension, and regularly works on the UCLA campus.

14.  Defendant Monroe Gordon Jr., is the Interim Vice-Chancellor for Student Affairs at UCLA, and would be the person responsible for implementing the injunctive relief sought by plaintiffs in this Complaint.  He is presently sued in his official capacity.

## FACTUAL BACKGROUND

### A.  The Distribution Of Sanctified Food Is A Core Evangelical Practice Of The Krishna Consciousness Religion.

15.  The Krishna Lunch plaintiff adheres to the evangelical teachings of Krishna consciousness, a religion within "the broad theological umbrella of the Vaishnava tradition of Bhakti Hinduism, formalized in the ninth century in Southern India." *Int'l Soc'y for Krishna Consciousness v. Barber*, 650 F.2d 430, 433 (2d Cir. 1981).  Krishna consciousness was introduced in America and the West in 1965 by His Divine Grace A.C. Bhaktivedanta Swami Prabhupada ("Srila Prabhupada") the eleventh guru in a succession of spiritual teachers extending back to the 15th Century.

16.  Members of Krishna Lunch sincerely and deeply believe that they have been directed by Srila Prabhupada to share Krishna consciousness with others. Devotees are thus compelled to venture into public venues such as the UCLA campus in order to chant and proselytize; to pray, sing and meditate; to distribute

**THIRD AMENDED COMPLAINT**

their religious literature; and to share sanctified vegetarian and vegan food with non-members of the religion.  Through these variegated activities, plaintiffs seek to educate members of the public, including the UCLA community, about issues such as the nature of the soul, karma and reincarnation, the Laws of Nature, global warming and climate change, animal protection, God-centered ecology, the relationship between science and religion, and the origin of life.  Included in these issues is the paramount belief is that animals, like humans, have a soul, and are entitled to the same rights and protection afforded their human brothers and sisters.  Plaintiffs' dietary mandates flow from this fundamental proposition.

17.  Krishna devotees are not permitted to consume any form of meat, fish or eggs. "If one wishes to engage in devotional service to the Supreme in order to be purified and to reach the goal of life – the transcendental loving service of God – then one should find out what the Lord desires of him. One who loves Krsna will give Him whatever He wants, and he avoids offering anything which is undesirable or unasked. Thus meat, fish and eggs should not be offered to Krsna." A.C. Bhaktivedanta Swami Prabhupada, *Bhagavad-gita As It Is,* 9:26 at 488.

18.  The Krishna Lunch plaintiff adheres to strict religious rules in the preparation of its vegetarian and vegan cuisine.  Only brahmanas, or priests, are allowed to cook.  Once the food is prepared by such priests, it is "offered" to Krishna in a sacerdotal ceremony called "arotika" and is then accepted by the devotees as the "mercy" of the Lord.  "If one offers Me with love and devotion a leaf, a flower, fruit or water, I will accept it." *Id.* 3:26 at 478.

19.  After the "arotik" ceremony, the food is considered to be sanctified, and is referred to in Sanskrit as "prasadam" or "prasada." Krishna consciousness teaches that one who consumes prasada is "released from all kinds of sins because they eat food which is offered first for sacrifice." *Id.* 3:13 at 176. "The material world is full of contaminations, and one who is immunized by accepting prasada of the Lord (food offered to Visnu) is saved from the attack, whereas one who

1   does not do so becomes subjected to contamination." *Id.* 3.14 at 178.

2      20.   Plaintiffs believe that prasadam should be widely shared with as many

3   people as possible. The consumption and distribution of prasadam, it is believed,

4   awakens the spiritual spark within one's heart, and leads to the revival of one's

5   dormant love for God.  It is a cornerstone of the religion: "The Krishna

6   consciousness movement is based on this principle: chant the Hare Krishna mantra

7   at every moment, as much as possible . . . and, as far as possible, distribute

8   *prasada*. . . . Simply by liberal distribution of *prasada* and *sankirtana*, the whole

9   world can become peaceful and prosperous." *Id.* 4.12.10 at 160.

10      21.   Plaintiffs also believe that young people, especially college students,

11   are highly receptive to their message.  Srila Prabhupada recognized that many

12   students receiving prasadam will be future leaders, teachers and government

13   officials, who will shape future policies and influence world events.  Distributing

14   prasadam to them, Srila Prabhupada taught, will help today's students become

15   spiritually enlightened and ultimately will lead the world to peace and  prosperity.

16      22.   For plaintiffs (as well for the followers of many other religions) the

17   distribution of prasadam is also an act of charity. Many students cannot afford

18   nutritious food, and are even homeless.  The late Steve Jobs (Apple co-founder)

19   has explained that he was so poor during college that he did not have a place to

20   live, and could not even afford to eat.  The Hare Krishnas came to his aid: "I didn't

21   have a dorm room, so I slept on the floor in friends' rooms, I returned Coke bottles

22   for the 5¢ deposits to buy food with, and I would walk the 7 miles across town

23   every Sunday night *to get one good meal a week at the Hare Krishna temple*. I

24   loved it. And much of what I stumbled into by following my curiosity and

25   intuition turned out to be priceless later on." Steve Jobs, *Commencement Address*

26   *at Stanford Univ*., Stanford News (June 14, 2005) (emphasis added) available at

27   http://news.stanford.edu/2005/06/ 14/jobs-061505/.

28      23.   An important goal of plaintiffs' program is thus to not only provide

**THIRD AMENDED COMPLAINT**

spiritual education based on the Vedic scriptures of ancient India, but to provide students, and others, with at least one healthy, nutritious, and tasty vegetarian/ vegan meal per day.

**B. The Krishna Lunch Program.**

24.  In furtherance of its evangelical, expressive, and charitable mission, Krishna Lunch seeks to provide a tangible alternative to a meat-based economy and food supply.  By consuming prasada in the context of plaintiffs' cultural and spiritual presentation, the students, faculty, administrators, and employees of the University will gain insight into the importance of animal protection, as well as the medical and environmental benefits of vegetarian/vegan diet.

25.  The specific area to which plaintiffs seek access is a small recess near the southeast corner of the Student Activities Center, immediately adjacent to Bruin Walk East.  During negotiations prior to this action, UCLA suggested this specific area (hereinafter "Assigned Area") as suitable for the Krishna Lunch program, *see* ¶ 39, *infra,* as confirmed by correspondence between counsel for the parties on July 21, 2016.

26.  The Assigned Area is approximately 3,240 square feet.  Plaintiffs' cultural and expressive program will occupy about 100 square feet. The serving area will be set back six-feet from the edge of the north-south walkway (which is 12-feet wide) to ensure that the program does not create congestion or interfere with pedestrian traffic flow.

27.  The time, money, and staff necessary to hold the Krishna Lunch program is formidable.  Compliance with applicable health, safety and fire requirements is also a major endeavor. Additionally, at least six to eight devotees are required to prepare and serve the prasadam, as well as to interact with guests in order to provide literature and discuss Krishna Lunch's beliefs with interested persons. Plaintiffs also intend to chant and sing their prayers and mantras.  It is not feasible or practical, therefore, to marshal all of the required resources to hold the

**THIRD AMENDED COMPLAINT**

program a mere four-days per year. It would be exceedingly difficult for plaintiffs do hold their program on such a limited basis.

28.  The ability of plaintiffs to disseminate their actual message is also severely impaired by the four-day restriction.  Krishna Lunch officials and members have many decades of accumulated and collective experience in spreading the Krishna consciousness religion.  It is their informed opinion that persuading interested persons to incorporate even a small portion of a non-meat diet and lifestyle requires, at a minimum: (1) regular, ongoing interaction with the "intended audience" and (2) the opportunity for interested persons to actually *sample* the different vegetarian and vegan preparations.  Without these two elements, plaintiffs do not have a realistic and meaningful opportunity to broadcast their message.

**C.  The Campus Lawn And Walkways Areas Of The UCLA Campus Are A Public Forum For Religious Exercise, Assembly, And Expression.**

29.  Plaintiffs seek access to those portions of the UCLA campus that are open to the general public without restriction, such as the Assigned Area. Access to this part of the campus is especially important to the plaintiffs because UCLA has a large and diverse student body that cannot be found at other venues.  For example, thirty percent (30%) of the students are Asian, 27.8% are Caucasian, and 17% are Hispanic/Latino.  There are, additionally, 6,422 international students from 49 countries.  Plaintiffs wish to meet and interact with such intelligent young people from all over the world, and expose them to plaintiffs' teachings and beliefs, including the importance of animal protection and a diet consisting of vegetarian and vegan sanctified food.  UCLA is one of the few places where such a diverse and concentrated audience can be found.

30.  The characteristics, features, and normal and traditional use of the Assigned Area make it particularly suitable for the plaintiffs' cultural and religious program.  The Assigned Area has a concrete patio, and numerous picnic tables are

already in place which are available for students and others to relax, peruse plaintiffs' literature, have casual conversation with plaintiffs, and to eat their lunch. An expansive lawn is located directly across (due east) from the Assigned Area, which is also available plaintiffs and others to engage in their expressive, religious, and associational activities.

31.  The Assigned Area is regularly used – with UCLA's knowledge and approval – by various groups and associations of students and faculty for the observance of religious and cultural holidays. The distribution and consumption of food (which is often directly connected to the purpose of the gathering) is a central and accepted feature of these events.

32.  The Krishna Lunch program is fully compatible with the declared educational mission of the University: "Free and open association, discussion and debate are important aspects of the educational environment of the University, and should be actively protected and encouraged, even where the positions advocated are controversial and unpopular."  UCLA Regulations on Activities, Registered Campus Organizations and Use of Properties § II. at 1 (7/20/10).

33.  The public areas of the UCLA campus, moreover, are an especially appropriate and important venue for plaintiffs' message.  The University is, literally, the size of a modest city, and is not a special or pristine enclave that is insulated from the surrounding campus and community.  Founded in 1919, UCLA encompasses 416 acres in the Westwood Village section of Los Angeles. The University has an enrollment of over 43,000 undergraduate, graduate, and medical/dental students.  There are also about 4,300 faculty members as well as 42,000 employees.

34.  UCLA has opened the campus sidewalks and lawn areas to the general public.  The "paved pedestrian walkways and lawns on University property are generally open to the public" between the hours of 6:00 a.m. and midnight.  *See*
/ / /

**THIRD AMENDED COMPLAINT**

UCLA Regulations on Activities, Registered Campus Organizations and Use of Properties § II. at 2 (7/20/10).

35.  UCLA has also expressly affirmed its robust commitment to the exercise of expressive and religious rights: "The University is committed to assuring that *all persons* may exercise their constitutionally protected rights of free expression, speech, assembly, and worship," and "[i]t is the responsibility of the Chancellor to assure an ongoing opportunity for the expression of a variety of viewpoints." [UCLA] Policies Applying to Campus Activities, Organizations and Students §§ 30.10 & 20 (emphasis added).

36.  Plaintiffs believe that sharing food in a centrally located public place, such as the Assigned Area, serves the critical purpose of bringing widespread attention to importance of their religious beliefs, including animal rights.  The program seeks to elicit sympathy for and understanding of the deplorable manner in which animals are treated, and also seeks to motivate members of the UCLA community to take action on their behalf.

37.  Krishna Lunch does not seek unlimited access to the area, but will limit its program to two or three times per week, generally between the hours of 11:30 a.m. and 1:30 p.m.  Furthermore, plaintiffs will not block pedestrian traffic on the any of the nearby walkways, and will comply with all applicable heath, safety and fire regulations.

D.  **Procedural Background**.

38.  Plaintiffs initially sought permission from the University to conduct the lunch program in February, 2016.  A meeting between UCLA representatives and the plaintiffs' representatives was held on May 20, 2016.  Representing UCLA was its counsel, David Birnbaum, along with several other UCLA administrators. Representing the plaintiffs was Krishna Lunch president, Dennis Brown, and counsel, David M. Liberman.

/ / /

---

39.  At the meeting, UCLA outlined the health and safety requirements for the lunch program.  Plaintiffs' representatives informed the UCLA administrators that Krishna Lunch could readily satisfy each of these requirements.  During the meeting, UCLA representatives specifically proposed the Assigned Area as a place to conduct Krishna Lunch. (This area was later confirmed on a map sent by Birnbaum to Liberman on or about June 21, 2016. *See* Exhibit 1 to Complaint.).  By the end of the meeting, plaintiffs were under the distinct impression that there was no legitimate reason for prohibiting the lunch program, and that UCLA was going to approve the program on some kind of a regular basis.

40.  On May 27, 2016, Liberman informed Birnbaum by letter that Krishna Lunch was in the process of obtaining all of the necessary county permits.  Liberman also informed Birnbaum that Krishna Lunch was prepared to agree to a two-week trial run, three times a week, in order to demonstrate that the lunch program could be conducted in a safe and orderly manner.

41.  Krishna Lunch obtained a "Community Event" permit from the Los Angeles County Health Department on June 22, 2016, which was effective from July 1, 2016 to June 30, 2017.  The permit was forwarded to Birnbaum on July 18, 2016.  Liberman reiterated "that all food served at the Krishna Lunch program on campus: (1) will be prepared in a certified kitchen; (2) the food ("prasada") will be transported to the site in insulated containers and in a manner that meets all Health Department requirements; and (3) the prasada will be served at the site by either propane heated carts or chafing dishes, in accordance with all Health Department and reasonable and appropriate UCLA requirements."

42.  Notwithstanding Krishna Lunch's ability and willingness to adhere to every reasonable standard, UCLA rejected Krishna Lunch's request to hold the program on a regular basis at the Assigned Area.  In an August 8 letter, Birnbaum asserted the University's so-called concern with establishing "precedent."  Birnbaum informed Krishna Lunch that it could hold its program *a maximum* of

four times a year.  Birnbaum also informed plaintiff that a fee of an undetermined amount would have to be paid.

43.  In a follow-up letter to Krishna Lunch, Birnbaum advised Krishna Lunch that it would be prosecuted, inter alia, under Cal. Educ. Code § 92440.5 and Cal. Code Regs. §§ 100004 and 1000012, as well as other applicable codes and ordinances, should it attempt to conduct the program without approval.

44.  The acts and practices of the defendant, as well as his officers, agents, employees, and servants were/are performed under color of state law, and are the actions of the state within 42 U.S.C.§ 1983 and the Fourteenth Amendment.

## CLAIMS FOR RELIEF.

## Violation Of 42 U.S.C. § 1983

### [Count One–Violation of Freedom of Religion]

45.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44, as though fully set forth herein.

46.  Plaintiffs' cultural and religious program, which includes the distribution of sanctified vegetarian and vegan food to the UCLA community, is a core evangelical practice rooted in the beliefs of the Krishna consciousness religion.  Members of Krishna Lunch are compelled by Srila Prabhupada's teachings to feed persons who are not followers of the religion.  For Krishna Lunch, the distribution and consumption of prasadam is a form of religious worship as well as evangelical expression.

47.  By limiting plaintiffs' access to the Assigned Area – which is a public forum – to four days per year, the UCLA restriction imposes a direct and unconstitutional burden on the exercise of plaintiffs' religiously motivated conduct. Members and officials of Krishna Lunch have extensive experience in disseminating their religious beliefs in public forums such as the Assigned Area, and have concluded that they require regular, ongoing interaction with interested persons in order to convey their message in a meaningful way.

48. The UCLA restriction is also aimed at, and discriminates against, plaintiffs' pro animal/anti-meat message. The University and its faculty apply for, and receive, millions of dollars each year in private and governmental grants that are earmarked specifically for animal testing and experimentation, which plaintiffs oppose. UCLA is also concerned that many of its students and faculty will actually adopt a cruelty free diet and lifestyle, thereby undermining the sale of meat products by its authorized commercial vendors.

49. The UCLA restriction is not supported by either a compelling, substantial, or rational governmental interest. Nor is it narrowly tailored, or rationally related, to any governmental interest the University may assert, including the avoidance of unwanted "precedent." There exist, moreover, numerous and obvious less burdensome alternatives that would readily satisfy the defendant's purported interest short of the draconian restriction at issue here.

50. Defendant's so-called interest in avoiding "precedent" is also unconstitutionally vague and ambiguous, in that the meaning of "precedent" is not defined anywhere in UCLA's regulations, and is thus subject to arbitrary and discriminatory application by the defendant. These same defects are applicable to the undefined "permit fee" required by the defendant, which can be adjusted upwards or downwards on the basis of defendant's support or opposition to the message being conveyed.

**[Count Two – Violation of Freedom of Speech]**

51. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 50, as though fully set forth herein.

52. Chanting devotional prayers, distributing religious literature, and speaking with interested persons – both individually and in concert with others – are fully protected components of plaintiffs' religious and cultural program. The distribution of sanctified vegan and vegetarian food is also inherently expressive, in that it conveys a message about the spiritual and ethical aspects of animal

protection, as well as the environmental and medical damage caused by using animals for food.  Alternatively, plaintiffs' program, including the distribution of prasadam, is "sufficiently imbued with elements of communication to fall within the scope of the [protection of the] First and Fourteenth Amendments," *Spence v. Washington*, 418 U.S. 405, 409 (1974).

53.  The First Amendment protects the right of every citizen to reach the minds of willing listeners, and to do so there must be opportunity to win their attention.  Bruin Walk, which encompasses the Assigned Area, is a public forum where individuals and groups gather to express their views on important social, political, ethical, moral, and religious topics.

54.  The University's refusal to allow Krishna Lunch to conduct its cultural and expressive program at the Assigned Area, except four-days per year, substantially impairs plaintiffs' right to freedom of speech and expression in a public forum.  The ban is based on the content of plaintiffs' pro-animal/anti-meat message. Avoiding unwanted precedent, moreover, is neither a compelling nor significant governmental interest.  Nor is the ban the least restrictive means of achieving any compelling governmental interest the defendant may assert.

55.  The ban also fails as a time, place, and manner regulation of speech, in that it is posited on plaintiffs affiliation with the Hare Krishna movement, and on the content of plaintiffs' pro-animal/anti-meat message. The restriction is not supported by a significant governmental interest, and is not narrowly tailored to advance any interest the defendant may assert, including the avoidance of unwanted "precedent." The restriction also  burdens substantially more speech than is required, and does not leave open  adequate and meaningful alternative channel of communication.

56.  Defendant, not plaintiff, moreover, has the burden of substantiating its asserted governmental interest, which it is unable to do.

57.  Plaintiffs are not able to win the attention of their target audience if

limited to four-days a year.  Nor are plaintiffs able to convey their message if their expressive activities are limited to written and oral communication at a table located on Bruin Walk.

58.  Plaintiffs require regular, ongoing interaction with the UCLA community in order to convey their message that animals should be protected, not slaughtered, and that a vegetarian/vegan diet is healthier and less harmful to the environment than a diet that includes meat, fish and eggs.  The distribution and consumption of prasadam is an indispensable component of plaintiffs' message, in that interested persons must have the opportunity to actually sample prasadam in order to understand the substance of plaintiffs' message.

59.  The restriction is also content-based, in that it protects the rights of established groups propagating well known messages, while suppressing the message of minority groups who are not as firmly established or known.

60.  The fee requirement lacks any guidelines or standards to govern UCLA officials in determining the specific amount that may be imposed.  The fee is thus subject to arbitrary and discriminatory application based upon the identity and/or views of the speaker.

**[Count Three – Violation of Freedom of Assembly and Association]**

61.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60, as though fully set forth herein.

62.  The practice of persons who share common views banding together to achieve a common end is deeply embedded in the American political process. The freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" ensured by the Due Process Clause of the Fourteenth Amendment.

63.  The plaintiffs seek to associate with like-minded persons, as well as persons who are aspiring to add spirituality to their lives.  This association serves to not only reinforce the common goals shared by the plaintiffs, but also seeks to

stimulate UCLA students, faculty, administrators, and employees to adopt such beliefs and incorporate such practices in their personal lives.

64. Defendant has violated plaintiffs' right to freedom of association by preventing them from using the Assigned Area on a fair and equitable basis to assemble and engage in religious exercise and expression through chanting, literature distribution, speaking, and sharing their sanctified food.

65. Defendant's policy and practice of restricting plaintiffs' association to four-days per year is not the least restrictive means of advancing any compelling interest.  Defendant's asserted interest in avoiding unwanted "precedent" is not compelling.  There are also numerous less restrictive alternatives to the ban.

66. Defendant's restriction is not a valid time, place and manner restriction of plaintiffs' right to associate and assemble, in that it is based on the content, purpose of plaintiffs' association; it burdens substantially more associational expression than is necessary; and it does not provide plaintiffs with meaningful and adequate alternative ways of exercising their associational rights.

**EQUITY AND IRREPARABLE INJURY**.

67. There is between the parties an actual controversy as set forth herein. The plaintiffs are suffering irreparable injury and are threatened with irreparable harm in the future by reason of the acts alleged herein, inasmuch as a substantial loss or impairment of freedom of speech, religion and association has occurred and will continue to occur so long as the defendant's conduct continues.  Plaintiffs will be harassed, intimidated, cited, arrested, or prosecuted by the defendant, or his agents, if they attempt to exercise their constitutional rights at the Free Speech area of the UCLA campus.

68. Plaintiffs have no plain, adequate, or complete remedy to speedily redress the wrongs complained of herein other than this action.  Any other remedy to which plaintiffs could be remitted would be attended by such uncertainties and delays that it would cause further irreparable injury, damage, and inconvenience to

them.  Damages, while applicable, are not adequate to fully protect plaintiffs from the continuing effects of abridgment of their expressive rights.

### RELIEF.

Wherefore, plaintiffs pray that this Court grant:

(1)  A preliminarily and/or permanent injunction prohibiting the defendant, along with his agents, officers, employees, and any person or entity acting in concert with him, from enforcing the prohibition of plaintiffs' right to conduct the Krishna Lunch program, and associated expressive activities on public areas of the UCLA campus;

(2)  A declaration that the defendant's restriction, on its face and as applied to the Krishna Lunch program and associated activities, contravenes the First and Fourteenth Amendments to the United States Constitution;

(3)  Attorney's fees, including expenses of counsel;

(4)  Costs of suit; and

(5)  Such other and further relief as the Court deems just and proper.

Dated: Oct. 23, 2017              Respectfully submitted,

                                        LAW OFFICES OF ROBERT C. MOEST

                                               -and-

                                        LAW OFFICES OF DAVID M. LIBERMAN

                            By: ____S/David M. Liberman_____
                                      David M. Liberman
                                      Attorneys for Plaintiffs

**THIRD AMENDED COMPLAINT**

# EXHIBIT "1"

LIBRARY
110 Westwood Plaza
STUDENT CENTER
Young Drive East
CHARLES E
MULLIN
MANAGEMENT
COMMONS
CORNELL
HALL
ROLFE HALL
345 Portola Plaza
CAMPBELL HALL
335 Portola Plaza
ANDERSON GRADUATE SCHOOL OF MANAGEMENT
110 Westwood Plaza
GOLD
HALL
ENTREPENEURS
HALL
COLLINS
EXECUTIVE
EDUCATION
CENTER
NSET BLVD.
E. YOUNG DRIVE NORTH
WESTWOOD
PLAZA
PS- 4
221 Westwood Plaza
ENTRANCE
KAUFMAN HALL
120 Westwood Plaza
FOWLER
MUSEUM
308 Charles E.
Young Dr. N
ROYCE HALL
10745 Dickson Plaza
HAINES HALL
375 Portola Plaza
E. Young
orth
ENTRANCE
PS- JANSS
170 Westwood Plaza
WILSON
PLAZA
PHILANTHROPY
COURT
JANSS
STEPS
FOUNTAIN
DICKSON
PLAZA
RAL FIELD
WOODEN
CENTER
221 Westwood Plaza
ASHE
CENTER
221 Westwood Plaza
STUDENT ACTIVITY
CENTER
220 Westwood Plaza
Scale = 50'
POWELL LIBRARY
10740 Dickson Plaza
HUMANITIES
BUILDING
415 Portola Plaza
BRUIN WALK
BRUIN WALK
PORTOLA PLAZA
WALK
MORGAN CENTER
301 1/2 Westwood Plaza
PHYSICS &
ASTRONOMY
430 Portola Plaza
ACKERMAN
UNION
308 Westwood Plaza
KERCKHOFF
HALL
308 Westwood Plaza
MOORE
HALL
PAVILION
stwood Plaza
JAMES WEST
ALUMNI CENTER
325 Westwood Plaza
PORTOLA
PLAZA BLDG
460 Portola Plaza
KNUDSEN
475 Portola Plaza
INVERT
FOUNT
PORTOLA PLAZA
ENG. I
404 Westwood
Plaza
ENG.
REPLACEMENT
410 Westwood
Plaza
MATH SCIENCES
520 Portola Plaza
FRANZ HALL
502 Portola Plaza
PS-6
425 Westwood Plaza
G FIELD
BOELTER HALL
580 Portola Plaza
GEOLOGY
595 Charles E. Young Dr. East
ENGINEERING IV
420 Westwood Plaza
COURT OF
SCIENCES
SLICHTER
603 Charle
Young Dr
YOUNG HALL
607 Charles E. Young Dr. East
STRATHMORE
BUILDING
501 Westwood
Plaza
PS-8
estwood Plaza
555
PLAZA
PS-9
540 Westwood Plaza
CNSI
570 Westwood Plaza
FOOD FACILITY/
BOMBSHELTER
617 Charles E.
Young Dr. East
BOYER
HALL
611 Charles E
MOLECU
SCIENCE
BUILDIN
609 Charles
Young Dr.

