SCHIFF HARDIN LLP
William J. Carroll (Bar No. 118106)
*wcarroll@schiffhardin.com*
Matthew W. Callahan (Bar No. 307782)
*mcallahan@schiffhardin.com*
One Market, Spear Street Tower, Ste. 3100
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile:  (415) 901-8700

Attorneys for Defendant
Monroe Gorden, Jr. Interim Vice Chancellor
of Student Affairs, sued in his official
capacity.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KRISHNA LUNCH OF SOUTHERN CALIFORNIA, INC., a California nonprofit religious corporation; RAJU MANTHENA, an Individual; SRINIVAS PRASAD, an Individual; NIKITA KATHURIA, an Individual; RAKSHA DUTT, an Individual; VIDORI VAIDE, an Individual; and BRUCE ELLINGSON, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> MONROE GORDON JR., Interim Vice Chancellor of Student Affairs, in his official capacity, <br><br> Defendant. | Case No.  2:16-cv-08422-DSF-PLA <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> **Case filed:** Nov. 13, 2016 <br> **Hearing Date:** Jan. 22, 2018 <br> **Hearing Time:** 1:30 p.m. <br> **Judge:** Hon. Dale S. Fischer |

## **TABLE OF CONTENTS**

I.      INTRODUCTION..............................................................................................1

II.     LEGAL STANDARD .......................................................................................3

III.    THE THIRD AMENDED COMPLAINT ........................................................3

IV.     ARGUMENT ....................................................................................................6

        A.      Plaintiffs Fail To State A Claim For Violation Of Their Right
                Under The Free Speech Clause. ............................................................6

        B.      Plaintiffs Fail to State a Claim for Violation of Their Rights Under
                The Free Exercise Clause. ..................................................................11

        C.      Plaintiffs Fail to State a Claim for Violation of Their Rights to
                Free Assembly and Association. .........................................................21

        D.      Further Leave To Amend Should Be Denied.......................................24

V.      CONCLUSION ..............................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Allen v. City of Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990) ................................................................ 3, 24

*Am. Life League, Inc. v. Reno*,
  47 F.3d 642 (4th Cir. 1995) .............................................................. 17, 24

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) ............................................................. 8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 3

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ................................................................... 3

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ................................................................................ 22

*Braun v. Terry*,
  148 F. Supp. 3d 793 (E.D. Wis. 2015) ................................................... 23

*Braunfeld v. Brown*,
  366 U.S. 599 (1961) ................................................................................ 14

*Bronx Household of Faith v. Bd. of Educ. of N.Y.C.*,
  750 F.3d 184 (2d Cir. 2014) .............................................................. 13, 14

*Brown v. Louisiana*,
  383 U.S. 131 (1966) .................................................................................. 7

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................ 24

*Christian Gospel Church, Inc. v. City of San Francisco*,
  896 F.2d 1221 (9th Cir. 1990) ........................................................... 13, 14

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law
  v. Martinez*,
  561 U.S. 661 (2010) .......................................................... 15, 17, 23

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1992) ...................................................................................17

*City of Dallas v. Stanglin,*
   490 U.S. 19 (1989) ................................................................................7, 21

*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) .................................................................................6, 7

*Commack Self-Serv. Kosher Meats, Inc. v. Hooker,*
   680 F.3d 194 (2d Cir. 2012) ....................................................................19

*Cornerstone Christian Sch. v. Univ. Interscholastic League,*
   563 F.3d 127 (5th Cir. 2009) .............................................................12, 13

*Cox v. New Hampshire,*
   312 U.S. 569 (1941) .............................................................................20, 21

*Doe v. United States,*
   58 F.3d 494 (9th Cir. 1995) ...........................................................3, 7, 15

*Emp't Div., Dep't of Human Res. of Or. v. Smith,*
   494 U.S. 872 (1990) ..................................................................................15

*FCC v. Beach Commc'ns, Inc.,*
   508 U.S. 307 (1993) ..................................................................................18

*Fleisher v. City of Signal Hill,*
   829 F.2d 1491 (9th Cir. 1987) ................................................................21

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,*
   No. 15-cv-60185 (S.D. Fla. Sept. 30, 2016) ...............................9, 10, 23

*Gadda v. State Bar of Cal.,*
   511 F.3d 933 (9th Cir. 2007) ...................................................................18

*GeorgiaCarry.Org, Inc. v. Georgia,*
   687 F.3d 1244 (11th Cir. 2012) ...............................................................12

*Grossbaum v. Indianapolis-Marion County Bldg. Auth.,*
   100 F.3d 1287 (7th Cir. 1996) .................................................................17

*Guam v. Guerrero,*
   290 F.3d 1210 (9th Cir. 2002) .................................................................18

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
   452 U.S. 640 (1981) ...................................................................................15

*Heller v. Doe*,
   509 U.S. 312 (1993) ...................................................................................18

*Hightower v. City of San Francisco*,
   77 F. Supp. 3d 867 (N.D. Cal. 2014) .......................................................10

*Jacobs v. Clark County Sch. District*,
   526 F.3d 419 (9th Cir. 2008) ....................................................................18

*Jones v. Schneiderman*,
   974 F. Supp. 2d 322 (S.D.N.Y. 2013) ........................................................9

*Lakewood Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*,
   699 F.2d 303 (6th Cir. 1983) ....................................................................14

*Life Sci. Church v. IRS*,
   525 F. Supp. 399 (N.D. Cal. 1981) ..........................................................12

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ...................................................................................15

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ..................................................................15

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992) ......................................................................................18

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch*,
   828 F.3d 1012 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 510 (2016) ...................14

*Parker v. Hurley*,
   514 F.3d 87 (1st Cir. 2008) .......................................................................12

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir. 2014) ..................................................................21

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   748 F.3d 583 (5th Cir. 2014) ....................................................................18

*Puckett v. Lexington-Fayette Urban Cty. Gov't*,
   60 F. Supp. 3d 772 (E.D. Ky. 2014) .........................................................19

*Recreational Devs. of Phoenix, Inc. v. City of Phoenix*,
    83 F. Supp. 2d 1072 (D. Ariz. 1999) ...................................................................... 22

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ................................................................................................ 22

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................................... 7, 8, 9, 10

*Salvation Army v. Dep't of Cmty. Affairs of N.J.*,
    919 F.2d 183 (3d Cir. 1990) ................................................................................... 23

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1962) ................................................................................................ 12

*Seeds of Peace Collective v. City of Pittsburgh*,
    No. 09-cv-1275, 2010 WL 2165365 (W.D. Pa. May 26, 2010) ........................... 10

*Spence v. Washington*,
    418 U.S. 405 (1974) ....................................................................................... passim

*Stagman v. Ryan*,
    176 F.3d 986 (7th Cir. 1999) .................................................................................. 23

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ................................................................... 16, 17, 18

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) ................................................................................ 18

*Taub v. City of San Francisco*,
    696 F. App'x 181 (9th Cir. 2017) ........................................................................... 10

*Texas v. Johnson*,
    491 U.S. 397 (1989) ........................................................................................ 6, 7, 8

*United States v. O'Brien*,
    391 U.S. 367 (1968) ........................................................................................ 6, 7, 8

*Villegas v. City of Gilroy*,
    363 F. Supp. 2d 1207 (N.D. Cal. 2005) ................................................................. 23

*Villegas v. Gilroy Garlic Festival Ass'n*,
    541 F.3d 950 (9th Cir. 2008) .................................................................................. 23

*Virginia v. Black*,
 538 U.S. 343 (2003) ...................................................................................... 6

*Voting for Am., Inc. v. Steen*,
 732 F.3d 382 (5th Cir. 2013) ....................................................................... 10

*Wilson-Perlman v. MacKay*,
 No. 2:15-cv-285-JCM-VCF, 2016 WL 1170990 (D. Nev. Mar. 23, 2016) ......... 19

*Windwalker v. Governor of Ala.*,
 579 F. App'x 769 (11th Cir. 2014)................................................................ 19

*Wong v. Bush*,
 542 F.3d 732 (9th Cir. 2008) ......................................................................... 7

*Wroblewski v. City of Washburn*,
 965 F.2d 452 (7th Cir. 1992) ....................................................................... 18

**STATUTORY AUTHORITIES**

Cal. Educ. Code § 92440.5 ................................................................................. 5

Pub. L. No. 103-141, 107 Stat. 1488 (Nov. 16, 1993)...................................... 13, 15

**RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6)............................................................................... 1, 3

Defendant Monroe Gorden, Jr., sued in his official capacity as Interim Vice Chancellor of Student Affairs, University of California, Los Angeles hereby submits this Memorandum of Points and Authorities in Support of his Motion to Dismiss Plaintiffs' Third Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]

## I.   **INTRODUCTION**

Plaintiffs have now had four opportunities to state a claim in this case, having filed their Complaint (Dkt. 4), First Amended Complaint ("FAC") (Dkt. 13), Second Amended Complaint ("SAC") (Dkt. 32), and, now, their Third Amended Complaint ("TAC") (Dkt. 40).  This Court has previously granted Defendant's respective motions to dismiss the FAC (Dkt. 31) ("June 8 Order") and the SAC (Dkt. 39) ("Sept. 26 Order").  In dismissing Plaintiffs' SAC, the Court offered Plaintiffs "one last chance to amend."  (*Id.* at 8.)

Plaintiffs' fourth attempt to state their claims fares no better than their previous attempts, in that the TAC retains the operative allegations deemed deficient in the SAC, and adds no new allegations that materially alter the analysis resulting in the earlier dismissals.

Plaintiffs' claim under the Free Speech Clause remains deficient because, as before, their lunch program does not qualify for First Amendment protection as expressive conduct.  Plaintiffs have added allegations that further detail the nature of the message they seek to convey through their distribution of "prasadam."  But in so doing, they persist in their failure to allege facts demonstrating a high likelihood that a reasonable observer would understand Plaintiffs' message – without the benefit of explanatory speech.  Indeed, Plaintiffs new allegations describing the cultural "context" within which they distribute their vegetarian/vegan lunches doubles down on the role played by explanatory speech – a role that entirely

---

[1] The Third Amended Complaint continues to erroneously refer to the Interim Vice Chancellor as "Monroe Gordon Jr."

1  undercuts their effort to characterize their lunch service as expressive conduct
2  protected by the First Amendment.

3      Plaintiffs' Free Exercise claim remains deficient as well.  As before,
4  Plaintiffs have failed to allege any constitutionally impermissible burden on any
5  religious practice or belief resulting from the frequency limitation imposed by the
6  University.  The TAC includes additional allegations suggesting that UCLA's
7  campus is one of the few places that a diverse student body can be found in the Los
8  Angeles area.  (TAC ¶ 29.)  But even if these allegations are credited, they do not
9  alter the fact that the challenged restriction leaves Plaintiffs free to distribute
10  prasadam literally anywhere else in Los Angeles or beyond; to enter UCLA to
11  invite those present to participate in any such lunch program; and to conduct its
12  lunch program at UCLA up to four times a year.  In short, any burden imposed on
13  Plaintiffs' alleged religious imperative to share prasadam as widely as possible is
14  negligible and lacks constitutional significance.

15      Any such burden would not violate Plaintiffs' Free Exercise rights in any
16  event.  The TAC alleges no new facts that compel the Court to change its earlier
17  conclusion that the University's restriction is neutral and generally applicable, and
18  therefore subject to rational basis review.  Nor do Plaintiffs even attempt to allege
19  facts demonstrating there is no conceivable rational basis to support that restriction.
20  Plaintiffs add new allegations purporting to describe how the restriction interferes
21  with their religious practices.  But such interference does nothing to establish a Free
22  Exercise claim, where, as here, it results from application of a neutral, generally
23  applicable restriction that passes rational basis review.

24      As before, Plaintiffs' claim alleging violation of their rights to associate
25  suffers the same fate as their speech and free exercise claims.  The derivative right
26  to associate for purposes of speech and/or free exercise is not entitled to greater
27  protection than the rights from which it was derived.  Because Plaintiffs have failed
28  to sufficiently allege any violation of their speech or free exercise rights resulting

1   from the University's restriction of its proposed lunch program, that restriction does

2   not, as a matter of constitutional law, unlawfully burden First Amendment

3   associational rights.

4   **II.    LEGAL STANDARD**

5          Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for

6   failure to state a claim upon which relief can be granted.  The court should grant relief

7   under Rule 12(b)(6) if the complaint lacks either a cognizable legal theory or facts

8   sufficient to support such a theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d

9   696, 699 (9th Cir. 1990).  In considering a motion to dismiss, the court "must take all

10  of the factual allegations in the complaint as true," but is "not bound to accept as true

11  a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662,

12  678 (2009).  Leave to amend is not required when the complaint cannot be cured by

13  the allegation of different or additional facts. *Doe v. United States*, 58 F.3d 494, 497

14  (9th Cir. 1995).  "The district court's discretion to deny leave to amend is particularly

15  broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly

16  Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

17  **III.   THE THIRD AMENDED COMPLAINT**

18         In the following summary, Defendant refers to the allegations of the Third

19  Amended Complaint ("TAC") and to letters between counsel for Krishna Lunch

20  and University counsel, each of which are referenced in the TAC.  These letters are

21  attached to the Declaration of William J. Carroll ("Carroll Decl."), submitted in

22  support of Defendants' Motion to Dismiss the First Amended Complaint.  (Dkt 17-

23  1, Exhs. A-D.)

24         The allegations of the Third Amended Complaint do not differ materially from

25  those set forth in its immediate predecessor.  As in the Second Amended Complaint,

26  Plaintiffs continue to allege, *inter alia*, that:

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Krishna Lunch seeks to "provide a tangible alternative to a meat-based economy and food supply," and believes that by consuming vegetarian meals, or prasada, "students, faculty, administrators, and employees of the University will gain insight into the importance of animal protection, as well as the medical and environmental benefits of vegetarian/vegan diet."  (TAC ¶ 24.)

- Members of Krishna Lunch seek to educate the public, including members of the UCLA community, about issues such as the nature of the soul, karma and reincarnation, global warming and climate change, animal protection, God-centered ecology, the relationship between science and religion, and the origin of life.  (TAC ¶ 16.)

- The distribution of prasada "is a fundamental and central evangelical mandate of the Krishna consciousness religion, and is a form of religious worship," which "conveys an important message about the spiritual, environmental, and medical benefits of a vegetarian and/or vegan diet." (TAC ¶ 5.)

- Plaintiffs believe that prasada "should be widely shared with as many people as possible."  (TAC ¶ 20.)  "The consumption and distribution of prasadam, it is believed, awakens the spiritual spark within one's heart . . . ."  (*Id*.)  "It is a cornerstone of the religion . . . ."  (*Id*.)

- Plaintiffs' dietary mandates flow from the fundamental proposition that "animals, like humans, have a soul, and are entitled to the same rights and protection afforded their human brothers and sisters."  (TAC ¶ 16.)

- In order to conduct their lunch program, Plaintiffs seek access to a specified area on UCLA's campus adjacent to Bruin Walk East, and contend that correspondence between counsel for the parties during negotiations prior to this action "confirmed" that this area "as suitable for the Krishna Lunch program."  (TAC ¶ 25.)

- The pre-litigation negotiations between the parties included a May 20, 2016 meeting at which UCLA "outlined the health and safety requirements for the lunch program," and "Plaintiffs' representatives informed the UCLA administrators that Krishna Lunch could readily satisfy each of these requirements." (TAC ¶ 39.)  Krishna Lunch subsequently obtained a "Community Event" permit from the Los Angeles County Health Department, and advised the University representative that the food served at the Krishna Lunch program will be prepared, transported, and served at the site "in accordance with all Health Department and reasonable and appropriate UCLA requirements."  (TAC ¶ 41.)

- UCLA subsequently "rejected Krishna Lunch's request to hold the program on a regular basis" in the designated area.  (TAC ¶ 42.)  Plaintiffs refer to an August 8 letter from UCLA Senior Campus Counsel David Birnbaum, in which Mr. Birnbaum advised Plaintiff's counsel that UCLA could not authorize Krishna Lunch to serve prepared food on campus with the frequency it proposed, and instead offered Krishna Lunch "the same opportunity that is available to other off-campus organizations that wish to serve prepared food: service up to four times a year, at a location and time to be determined . . . ."  (*Id.*); (Carroll Decl., Exh. C).  In this same letter, Mr. Birnbaum states that "as I mentioned in my original letter to you of March 14, 2016, Krishna Lunch is free to secure a place on Bruin Walk, consistent with campus time, place, and manner rules, to share information about its philosophy, including vegan meals, and to advise students about locations off campus where students might obtain vegan food."  (*Id.*)[2]

---

[2] Plaintiffs allege that "in a follow-up letter to Krishna Lunch, Mr. Birnbaum further advised Krishna Lunch that it would be prosecuted, inter alia, under Cal. Educ. Code § 92440.5 and Cal. Code Regs. §§ 100004 and 1000012, as well as other applicable codes and ordinances, should it attempt to conduct the program without approval."  (TAC ¶ 43.) Mr. Birnbaum sent this follow-up letter on August 15, 2016, in response to an August 10, 2016 letter from Krishna Lunch's counsel asking Mr. Birnbaum to identify the laws that

As in the SAC, the TAC continues to allege that Plaintiffs intend to chant devotional prayers, distribute religious literature, and speak with interested persons as part of the lunch program.  (TAC ¶ 52.)  The TAC alleges additional details regarding these activities, which Plaintiffs now characterize as a "cultural presentation" through which "plaintiffs wish to disseminate their religious, philosophical and ethical beliefs and teachings to members of the UCLA community . . . ."  (TAC ¶¶ 2-4.)

Plaintiffs contend that the University's decision to limit the frequency of the lunch program to four times per year violates their rights to free speech under the U.S. Constitution (TAC ¶¶ 51-60), free exercise of religion under the U.S. Constitution (*id*. ¶¶ 45-50), and free assembly and association under the U.S. Constitution (*id*. ¶¶ 61-66).

## IV.   <u>ARGUMENT</u>

### A.   <u>Plaintiffs Fail To State A Claim For Violation Of Their Right Under The Free Speech Clause.</u>

The First Amendment's Free Speech Clause has been construed to protect not only actual speech, but also "expressive" or "symbolic" conduct.  *See Virginia v. Black*, 538 U.S. 343, 358 (2003); *Spence v. Washington*, 418 U.S. 405, 409 (1974); *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  Plaintiffs have the burden of showing that the alleged proscribed activity – here, the proposed lunch program – is either speech or expressive conduct and that the First Amendment applies to it.  *Texas v. Johnson*, 491 U.S. 397, 403 (1989).  When asserting a violation of the First Amendment, "it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies.  To hold otherwise would be to create a rule that all conduct is presumptively expressive."  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

may be violated if Krishna Lunch attempted to serve food on the UCLA campus without approval from University officials.  (Carroll Decl. ¶ 7, Exh. D.)

Plaintiffs cannot meet this burden by asserting that the act of serving vegetarian/vegan meals is intended to communicate certain ideas concerning the merits of a vegetarian/vegan diet.  The Supreme Court has admonished against adopting the "view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."  *Johnson*, 491 U.S. at 404 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).  This is true in part because "[i]t is possible to find some kernel of expression in almost every activity a person undertakes. . . ."  *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Rather, the Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive."  *Wong v. Bush*, 542 F.3d 732, 736 (9th Cir. 2008) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006)).  For more than forty years, the Supreme Court has, in determining "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," asked "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'"  *Spence*, 418 U.S. at 410-11 (emphasis added).[3]  In short, the First Amendment protects pure speech or conduct that is "sufficiently imbued with elements of communication," meaning "an intent to convey a particularized message is present, and the likelihood is great that the message will be

---

[3] Cases in which the Supreme Court has recognized the "expressive nature" of conduct thus address circumstances in which the conduct communicated a clear and particularized political or social message that was readily understood by those who viewed it.  *E.g. Johnson,* 491 U.S. at 406 (the burning of a United States flag by a protestor during a political march at the Republican National Convention); *Schacht v. United States*, 398 U.S. 58, 62-63 (1970) (the wearing of American military uniforms in a dramatic presentation criticizing American involvement in Vietnam); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 505, (1969) (wearing of black arm-bands by school students on particular days in protest of the Vietnam War); *Amalgamated Food Emps. Union Local 509 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 313-14, (1968) (peaceful picketing by union members of a supermarket in a large shopping center to protest unfair labor practices); *Brown v. Louisiana,* 383 U.S. 131, 141-42 (1966) (conducting a silent sit-in by blacks in a "whites only" area to protest segregation).

1  understood by those who view it." *Anderson v. City of Hermosa Beach*, 621 F.3d
2  1051, 1058 (9th Cir. 2010) (alterations and internal quotation marks omitted) (quoting
3  *Spence*, 418 U.S. at 409-11); *Rumsfeld*, 547 U.S. at 65-66; *O'Brien*, 391 U.S. at 376;
4  *Johnson*, 491 U.S. at 404.

5          As with each of Plaintiffs' two most recent attempts to plead a violation of the
6  Free Speech Clause, their current attempt also fails, in that Plaintiffs have failed to
7  allege that there is a great likelihood that their particularized message would be easily
8  understood by those who view it.  In concluding no such likelihood existed with
9  respect to Plaintiff's pro-animal/anti-meat message, this Court previously observed
10  that "such a message likely requires explanatory speech . . . . which is 'strong
11  evidence that the conduct at issue here is not so inherently expressive that it
12  warrants protection.'"  (Sept. 26 Order at 6-7 (quoting *Rumsfeld*, 547 U.S. at 66).)[4]
13  This Court noted, in particular, the SAC's allegations acknowledging that, as part of
14  the program, Krishna Lunch devotees will "interact with guests in order to provide
15  literature and discuss Krishna Lunch's beliefs with interested persons," as well as
16  chant and sing.  (Sept. 26 Order at 6 (citing SAC ¶ 22).)  Plaintiffs continue their
17  reliance on explanatory speech, by again referring to these same activities as part of
18  the "context" for their distribution of prasadam.  (TAC ¶¶ 24, 27.)[5]

19          Plaintiffs rely upon a "context" featuring explanatory speech, because absent
20  such speech, Krishna Lunch's distribution of food cannot be readily understood as
21  conveying their particularized message.  *See First Vagabonds Church of God v.*
22  *City of Orlando*, 610 F.3d 1274, 1285 (11th Cir.) ("[J]ust feeding people in the park

23

---

24  [4]  In *Rumsfeld*, the Supreme Court held that the expressive component of a law school's
differential treatment of military recruiters was not created by the conduct itself but by the
25  speech that accompanied it.  547 U.S. at 66. As the Court observed, "[i]f combining
speech and conduct were enough to create expressive conduct, a regulated party could
26  always transform conduct into 'speech' simply by talking about it."  *Id.*

27  [5]  "By consuming prasada in the context of plaintiffs' cultural and spiritual presentation,
the students, faculty, administrators, and employees of the University will gain insight into
28  the importance of animal protection, as well as the medical and environmental benefits of
vegetarian/vegan diet."  (TAC ¶ 24.)

is conduct too ambiguous to allow us to conclude that a great likelihood exists that an objective reasonable observer would understand that the feeders are trying to convey a message."), *opinion vacated and aff'd on other grounds in relevant part and reinstated in part*, 638 F.3d 756 (11th Cir. 2011) (en banc); *id.* ("[W]e are unpersuaded that the conduct of simply feeding people—the only *conduct* regulated by the Ordinance—is expressive for First Amendment purposes."); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, No. 15-cv-60185, *24-25  (S.D. Fla. Sept. 30, 2016), ECF No. 78 ("[O]utdoor food sharing . . . . is not expressive conduct, entitled to protection under the Free Speech Clause of the First Amendment."), *appeal docketed*, No. 16-16808 (11th Cir. Oct. 28, 2016); *Jones v. Schneiderman,* 974 F. Supp. 2d 322, 332-37 (S.D.N.Y. 2013) (holding that fans of live mixed martial arts performances, even if they appreciate and learn about the sport, are not "likely to perceive [the performances] as conveying the allegedly expressive messages" and therefore such performances are not protected by the First Amendment).

Plaintiffs contend that in distributing prasada, they will enable members of the UCLA community to "gain insight into the importance of animal protection, as well as the medical and environmental benefits of a vegetarian/vegan diet," and that the proposed lunch program "seeks to elicit sympathy for and understanding of the deplorable manner in which animals are treated, and also seeks to motivate members of the UCLA community to take action on their behalf."  (TAC ¶¶ 24, 36.) But there is nothing inherent about the serving of vegetarian/vegan lunches that makes it highly likely this message will be understood by those who observe or participate in the lunch program.  Plaintiffs' reliance upon a "context" that includes proselytizing, posting signs, chanting, and distributing literature cannot transform the lunch program into expressive conduct, because conduct remains unprotected by the First Amendment where "[t]he expressive component . . . is not created by the conduct itself but by the speech that accompanies it."  *Rumsfeld*, 547 U.S. at 66;

1    *accord Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013) ("[T]he

2    Supreme Court has repeatedly explained that non-expressive conduct does not

3    acquire First Amendment protection whenever it is combined with another activity

4    that involves protected speech."); *Hightower v. City of San Francisco*, 77 F. Supp.

5    3d 867, 876-77 (N.D. Cal. 2014) ("[W]hether those that view certain conduct are

6    likely to understand its intended message must be evaluated on a case-by-case basis,

7    taking into account the context and circumstances surrounding the conduct, but

8    without regard to any explanatory speech that accompanies it." (citing *Rumsfeld*,

9    547 U.S. at 66.)), *aff'd sub nom. Taub v. City of San Francisco*, 696 F. App'x 181

10   (9th Cir. 2017).  Thus, the contemplated speech accompanying the lunch program

11   does nothing to imbue it with First Amendment protection.  *See Fort Lauderdale*

12   *Food Not Bombs*, No. 15-cv-60185 at *24-25 ("[O]utdoor food sharing does not

13   convey Plaintiffs' alleged particularized message unless it is combined with other

14   speech, such as that involved in Plaintiffs' demonstrations . . . . Therefore, the Court

15   finds that Plaintiff's conduct is not expressive Conduct, entitled to protection under

16   the Free Speech Clause of the First Amendment."); *Seeds of Peace Collective v.*

17   *City of Pittsburgh*, No. 09-cv-1275, 2010 WL 2165365, at *6-7 (W.D. Pa. May 26,

18   2010) (holding that allegations tying "acts of food preparation" to other First

19   Amendment activity "fail[] to sufficiently imbue these acts with the necessary

20   elements of communication so as to fall within the scope of the First Amendment"

21   and dismissing the claims with prejudice), *aff'd in part and vacated in part on other*

22   *grounds*, 453 F. App'x 211 (3d Cir. 2011).[6]

23

---

24   [6] To the extent Plaintiffs still contend that their lunch program is "purely expressive"
     activity, their argument is foreclosed by *Anderson v. City of Hermosa Beach*, 621 F.3d
25   1051, 1058 (9th Cir. 2010) and other cases recognizing that the *Spence* test applies to acts
     like burning a flag, or wearing an black armband, which "can be done for reasons having
26   nothing to do with any expression, and so require an interpretive step to determine the
     expressive elements of these processes." The act of serving vegetarian/vegan meals on a
27   college campus can be done for all sorts of reasons having nothing to do with expression,
     including fund-raising, profit, and other reasons. At a minimum, Plaintiffs' conduct in
28   providing lunch requires an interpretive step to determine the nature of any expressive

Speech by Krishna Lunch representatives extolling the merits of a vegetarian/vegan diet may well, as Plaintiffs allege,[7] be entitled to First Amendment protection.  However, the University made it clear in its correspondence addressing the proposed lunch program that Krishna Lunch remained free to come to UCLA and engage in such speech, subject to applicable time, place, and manner regulations.  (Carroll Decl. ¶ 6, Exh. C.)  The University's restriction extended only to Plaintiffs' proposed service of prepared food, and only to the extent they proposed to engage in such food service more than four times per year.  The Court's earlier conclusion remains apt: "Whatever constitutionally protected expression might occur on the UCLA campus would not be impermissibly infringed by the restriction, which imposes no limits on Plaintiffs' ability to engage in protected speech regarding their beliefs."  (Sept. 26 Order at 7-8.)  Because, as this Court has twice concluded, Plaintiffs' food service is not protected as expressive conduct under the First Amendment, Plaintiff's Free Speech claim must once again be dismissed.

## B.      Plaintiffs Fail to State a Claim for Violation of Their Rights Under The Free Exercise Clause.

As in their two earlier Complaints, Plaintiffs' claim that the University violated their rights to the Free Exercise of religion is deficient because 1) Plaintiffs have failed to allege facts demonstrating any constitutionally impermissible burden on the religious practices or beliefs of Krishna Lunch; and 2) any such burden was, in any event, the result of a neutral, generally applicable rule, which Plaintiffs have failed to demonstrate lacked any rational basis.

---

elements and, under *Spence*, whether any such expressive elements convey a particularized message that is readily understood by others.

[7] "Chanting devotional prayers, distributing religious literature, and speaking with interested persons—both individually and in concert with others—are fully protected components of plaintiffs' religious and cultural program."  (TAC ¶ 52.)

**1.      Plaintiffs Have Failed To Allege Facts Demonstrating Any
Constitutionally Impermissible Burden On Their Religious Beliefs.**

In stating a claim for violation of the Free Exercise Clause, "the standard
constitutional threshold question" is "whether the plaintiff's free exercise is interfered
with at all." *Parker v. Hurley*, 514 F.3d 87, 99 (1st Cir. 2008).  The burden is on the
plaintiff to allege facts demonstrating such an interference.  *See Sch. Dist. of Abington
Twp. v. Schempp*, 374 U.S. 203, 223 (1962) ("[I]t is necessary in a free exercise case
for [the plaintiff] to show the coercive effect of the enactment as it operates against
him in the practice of his religion."); *Life Sci. Church v. IRS*, 525 F. Supp. 399, 407
(N.D. Cal. 1981) ("[S]ome burden or coercion must be alleged in order for a claim
under the Free Exercise clause to arise.").  To survive a motion to dismiss, "a plaintiff
must allege a constitutionally impermissible burden on a sincerely held religious
belief[.]" *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012).
"This is so because, as a threshold issue – before a court even considers whether a law
is subject to the rational basis test or, alternatively, strict scrutiny – a court must be
able to determine that the protection of the Free Exercise Clause is triggered." *Id.*
"[T]o survive a motion to dismiss, all Free Exercise Clause challenges must include
allegations that the law [or policy] at issue creates a constitutionally impermissible
burden on a sincerely held religious belief." *Id.* at 1257.  Where a plaintiff fails to
allege facts showing that the government has "unduly restricted" a religious practice,
the plaintiff fails to state a claim for violation of the Free Exercise Clause.
*Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 137 (5th
Cir. 2009) (rejecting Free Exercise challenge to conditions placed on extracurricular
sports program).

Krishna Lunch alleges that providing vegetarian/vegan meals to the public has
spiritual significance and "is a form of worship."  (TAC ¶¶ 5, 46.)  Plaintiffs believe
that "the consumption and distribution of prasadam" will "awaken the spiritual spark
within one's heart, and lead to the revival of one's dormant love for God."  (*Id.* ¶ 20.)

1   Plaintiffs thus "believe that prasadam should be widely shared with as many people as
2   possible." (*Id.*)  Plaintiffs' professed desire to include "young people, especially
3   college students" (*id.* ¶ 21) as recipients of prasadam is one means to the end of
4   reaching "as many people as possible."  Plaintiffs also allege that "UCLA has a large
5   and diverse student body that cannot be found at other venues." (*Id.* ¶ 29.)  Yet
6   Plaintiffs do not suggest that the religious imperative to share prasadam is directed to
7   people who are "young," "intelligent," or who are college-educated.  Nor do they
8   allege that they must bring prasadam to a diverse population.  To the contrary, the
9   alleged imperative is to share prasadam "with as many people as possible."  (TAC ¶
10  20.)  There are, of course, innumerable other means to this end.  Krishna Lunch
11  remains free to conduct its lunch program at countless other locations throughout the
12  greater Los Angeles area, and beyond.

13          As in the two earlier iterations of Plaintiffs' Complaint, the TAC fails to allege
14  facts demonstrating that foregoing the regular and repeated distribution of prasadam
15  *on UCLA's campus* burdens their religious practices or beliefs.  *See Christian Gospel*
16  *Church, Inc. v. City of San Francisco*, 896 F.2d 1221, 1224 (9th Cir. 1990) (finding
17  no Free Exercise violation where church sought use permit to worship on property
18  because "[t]he burden on religious practice is not great when the government action . .
19  . does not restrict current religious practice but rather prevents a change in religious
20  practice" and "[m]ost significantly, the Church has made no showing of why it is
21  important for the Church to worship in this particular [property].")*, superseded on*
22  *other grounds by statute*, Pub. L. No. 103-141, 107 Stat. 1488 (Nov. 16, 1993); *Bronx*
23  *Household of Faith v. Bd. of Educ. of N.Y.C.*, 750 F.3d 184, 192 (2d Cir. 2014)
24  (finding no "burden[] . . . on conduct motivated by religious belief" for Free Exercise
25  purposes where a regulation was "only a decision by the Board not to subsidize
26  religious worship services by providing rent-free school facilities in which to conduct
27  them" because the regulation "leaves all religions free without interference to engage
28  in whatever religious practices they choose (including, of course, religious worship

services) throughout the City.").  As in *Christian Gospel Church*, Plaintiffs have failed to allege facts showing the religious significance of distributing prasadam in this particular location.  As in *Bronx Household*, the restriction here leaves Plaintiffs free to engage in this practice in any other location in Los Angeles, and beyond.

Plaintiffs' allegations raise, at most, issues of convenience or cost-effectiveness.  However, even crediting the TAC's allegation that "UCLA is one of the few places where such a diverse and concentrated audience can be found" (TAC ¶ 29), the impairment of convenience or cost-effectiveness does not constitute a substantial burden under the Free Exercise Clause.  The Free Exercise Clause does not require accommodation where a religiously acceptable alternative is readily available. *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1017 (9th Cir. 2016) (applying the more-restrictive Religious Land Use and Institutionalized Persons Act and rejecting claim that denial of marijuana implicated religious freedom when plaintiffs admitted use of peyote was permitted by their religion), *cert. denied*, 137 S. Ct. 510 (2016); *Christian Gospel Church, Inc.*, 896 F.2d at 1224; *Lakewood Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*, 699 F.2d 303, 307 (6th Cir. 1983) ("Inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise." (citing *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961)).  Because Krishna Lunch remains free to conduct its lunch programs throughout Los Angeles and beyond, and because there is no alleged religious significance to conducting its lunch program on a regular and recurring basis at UCLA, Plaintiffs have failed to allege any constitutionally impermissible burden on Krishna Lunch's religious practices or beliefs.

### 2.    Plaintiffs Have Failed To Allege Facts Necessary To Sustain Their Burden In Challenging The Rational Basis For The Restriction.

Even where a plaintiff has sufficiently alleged that the government's actions have in some way burdened its religious beliefs, that burden does not give rise to a constitutional violation where, as here, the burden results from application of a

neutral, generally applicable rule.

In evaluating Free Exercise Clause claims, courts are guided by the principle that "every person cannot be shielded from all burdens incident to exercising every aspect of the right to practice religious beliefs." *United States v. Lee*, 455 U.S. 252, 261. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990), *superseded on other grounds by statute*, Pub. L. No. 103-141, 107 Stat. 1488 (Nov. 16, 1993). Accordingly, the Free Exercise Clause does not entitle religious adherents to exemption from such neutral, generally applicable policies or rules. *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.31 (2010) ("*Hastings*") (upholding Hastings law school's non-discrimination policy against Free Exercise claim because it is a neutral rule of general applicability and plaintiff, "in seeking an exemption from Hastings' across-the-board all-comers policy . . . seeks preferential, not equal, treatment"); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 641 (1981) ("Inclusion of peripatetic solicitation as part of a church ritual does not entitle church members to solicitation rights in a public forum superior to those of members of other religious groups that raise money but do not purport to ritualize the process."). The extent to which a government policy interferes with the plaintiff's desired religious conduct is irrelevant; even where a policy has "devastating effects" on plaintiffs' religious practice and "virtually destroy[s] the . . . ability to practice their religion," an otherwise valid government policy does not offend the Free Exercise Clause. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1072 (9th Cir. 2008) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988)).

Plaintiffs have failed to state a claim under the Free Exercise Clause because, as alleged, the University acted pursuant to a neutral, generally applicable policy

restricting the frequency of food service events held by off-campus organizations. This Court previously held that the policy and fee, as alleged in the SAC, were "neutral and generally applicable." (Sept. 26 Order at 5.)  In so holding, the Court noted that "the record reflects that the specific conditions communicated to Plaintiffs' representatives are the <u>same</u> as applied to other off-campus groups." (Sept. 26 Order at 4.)  These conclusions apply with equal force to the TAC, and the correspondence referenced therein.[8]

For purposes of the Free Exercise Clause, neutrality is achieved if the challenged conduct "make[s] no reference to any religious practice, conduct, or motivation." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1137 (9th Cir. 2009) ("*Selecky*").  That is clearly the case here.  The cited restriction applies, by its terms, to *any* off-campus organization that wishes to sponsor an event serving prepared food, regardless of whether or not that organization has any religious affiliation or engages in any religious practices, and regardless of what the nature of the prepared food may be, whether vegetarian, non-vegetarian, or any other kind of food.

The TAC adds a new allegation asserting that the four-times-a-year restriction is "aimed at, and discriminates against, plaintiffs' pro animal/anti-meat message." (TAC ¶ 48.)  Plaintiffs allege UCLA receives "millions of dollars each year in private and governmental grants that are earmarked specifically for animal testing and experimentation" and "UCLA is also concerned that many of its students and faculty will actually adopt a cruelty free diet and lifestyle, thereby undermining the sale of meat products by its authorized commercial vendors." (*Id*.)  These allegations do nothing to undermine the neutrality of the restriction.  Plaintiffs allege no facts

---

[8] *See* TAC ¶ 42; Dkt. 17-1, Carroll Decl. ¶ 6, Exh. C (emphasis added) ("[W]e can offer Krishna Lunch *the same opportunity that is available to other off-campus organizations that wish to serve prepared food*: service up to four times a year, at a location and time to be determined if this proposal is acceptable to your clients.  Please be aware that, *as is the case with other off-campus organizations*, there is a charge for the use of space on the campus. . . . Indeed, a registered student organization would be subject to *the same limitation of four times/year* if it wished to serve prepared food on campus, for fund-raising or other purposes.")).

demonstrating that the facially neutral restriction has been discriminatorily applied in its operation by "target[ing] or singl[ing] out the practice of any religion because of religious content." *Selecky*, 586 F.3d at 1131.  They allege no facts showing that the restriction has been applied discriminatorily against any religious group, or against any group advocating a non-meat diet for religious reasons.  Even if Plaintiffs had plausibly alleged that the restriction was adopted in response to concerns about the consumption of vegetarian meals at UCLA – which they have not – it would make no difference, since it is the operation, not the underlying motive of the restriction, which is relevant for purposes of the Free Exercise Clause.  *See, e.g., Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995) (rejecting Free Exercise challenge to statute adopted in response to religious protests because "[u]nder the [statute] it makes no difference whether a violator acts on the basis of religious conviction or temporal views."); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1292 n.3 (7th Cir. 1996) (noting that the Supreme Court analyzes whether ordinances challenged under the Free Exercise Clause "had as their object the suppression of religion" by "analyzing both the text and the effect in the 'real operation' of the ordinance" but the Court "did not, however, analyze the motive behind the ordinances." (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-42 (1992) ("*Lukumi*"))).

A law is not generally applicable when the government, "in a selective manner[,] impose[s] burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543.  As before, Plaintiffs fail to allege facts showing that the challenged restriction targets them or any other religious group or belief.[9]  Because the cited restriction is both facially neutral and generally applicable, it passes constitutional

---

[9] By asserting a right under the Free Exercise Clause to an exemption from the University's neutral, generally applicable rule, Plaintiffs "seek[] preferential, not equal treatment," which the Free Exercise Clause does not require. *Hastings*, 561 U.S. at 697 n.31.

muster if it has a rational basis.[10]  *Guam v. Guerrero*, 290 F.3d 1210, 1215 (9th Cir. 2002); *see also Selecky* at 1130-31, 1134.  In applying rational basis review, a court must uphold the rule if it is rationally related to a legitimate governmental purpose. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 938 (9th Cir. 2007).[11]  Under the rational basis test, the legislative body or official decision-maker need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).  Instead, the government's action must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993).  Plaintiffs "have the burden to negat[e] every conceivable basis which might support [the rules]." *Selecky*, 586 F.3d at 1137; *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)), *cert. denied* 136 S. Ct. 2433 (2016); *see also Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classification.").

     In granting Defendant's previous motion, this Court concluded that the SAC "failed to allege facts that, if accepted as true, would "negate every conceivable basis" supporting the challenged restriction.  (Sept. 26 Order at 5) (citing *Selecky*, 586 F.3d at 1137).  As in their earlier Complaints, Plaintiffs make no attempt in the TAC to alleged facts negating the various reasons which could be cited in support of the

---

[10] As the Court concluded each of its two earlier orders dismissing this claim, the widely criticized doctrine of "hybrid rights" does not furnish a basis for applying strict scrutiny in assessing the restriction here.  (June 8 Order at 7 & n.4 (citing *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008)); (Sept. 26 Order at 4).

[11] Plaintiffs allege that "[t]here exist, moreover, numerous and obvious less burdensome alternatives that would readily satisfy the defendant's purported interest short of the draconian restriction here."  (TAC ¶ 49.)  Plaintiffs fail to allege what these alternatives are, but the existence of less burdensome alternatives is also irrelevant because "there is no least restrictive means component to rational basis review."  *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014) (citing *Heller*, 509 U.S. 312, 321 (1993)).

restriction limiting the frequency of events by off-campus organizations serving prepared food, including such reasons as the need to allocate the high demand for use of campus venues and facilities among the hundreds of student and outside organizations that could seek to hold such events; the need to minimize the potential for conflict between such food service events and the regular food services which are furnished by and which support the Associated Students of UCLA; the need to manage the administrative burdens posed by authorizing and monitoring food service events, including ensuring compliance with health and safety regulations governing service of prepared food, compliance with regulations governing the erection of temporary "food booths," compliance with fire safety regulations, as well as other campus regulations.  To the contrary, as was the case in their previous Complaints, Plaintiffs' allegations here are fully consistent with the University's reasons for limiting how often off-campus groups may distribute prepared food.  (TAC ¶¶ 27, 33, 39, 41, 42 (noting that "[c]ompliance with applicable health, safety and fire requirements is . . . a major endeavor" and the UCLA campus is "the size of a modest city" with over 90,000 students, faculty members, and employees).)

Because Plaintiffs have failed to negate any conceivable rational basis for the challenged restriction, their Free Exercise Claim must be dismissed.  *See Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 212 (2d Cir. 2012) (affirming dismissal of Free Exercise challenge to New York's kosher food act, finding plaintiff had failed to negate rational basis); *Windwalker v. Governor of Ala.*, 579 F. App'x 769, 774 (11th Cir. 2014) (affirming dismissal of Free Exercise claim); *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 60 F. Supp. 3d 772, 779 (E.D. Ky. 2014) (dismissing due process claim because plaintiff failed to negate every conceivable rational basis); *Wilson-Perlman v. MacKay*, No. 2:15-cv-285-JCM-VCF, 2016 WL 1170990, at *6-8 (D. Nev. Mar. 23, 2016) (refusing plaintiffs' request for discovery to argue statute fails rational basis test and dismissing claims).

Plaintiffs also fail to state a claim for violation of the Free Exercise Clause with

1    regard to the University's imposition of a fee for Krishna Lunch's use of UCLA

2    property to conduct its lunch program.  (TAC ¶ 50.)  Krishna Lunch was advised that

3    "as is the case with other off-campus organizations, there is a charge for the use of

4    space on the campus."  (Carroll Decl. ¶ 6, Exh. C; TAC ¶ 42.)  This fee requirement

5    is, by its terms, both generally applicable and neutral, in that it applies to off-campus

6    organizations without reference or regard to any religious affiliation, content,

7    association, or motive.  While Plaintiffs allege that the fee "can be adjusted upwards

8    or downwards on the basis of defendant's support or opposition to the message being

9    conveyed," (TAC ¶ 50), they do not allege that such an adjustment actually occurred

10   or that they were subject to a fee in any discriminatory amount.  In fact, neither

11   Plaintiffs' allegations nor the letters referenced therein suggest that Plaintiffs ever

12   actually requested or received a determination of the amount of the fee—or how it

13   was to be calculated—before filing suit over the unconstitutionality of the fee

14   requirement.  Nor do Plaintiffs allege any facts negating a rational basis for such a fee

15   requirement.  In fact, courts have long recognized that the government may charge

16   fees for the use of public spaces.  *See, e.g., Cox v. New Hampshire*, 312 U.S. 569,

17   576-77 (1941) (upholding license fee for parades on public streets).  The fact that the

18   University intended to charge a fee here furnishes no basis for Plaintiffs' Free

19   Exercise claim.

20        The Court's previous conclusions that the fee is neutral and generally

21   applicable, and that the SAC had failed to negate every conceivable rational basis for

22   the fee, apply equally to the TAC, which fails to allege any new facts through which

23   Plaintiffs could carry their burden.  Plaintiffs again fail to state any Free Exercise

24   claim with regard to this fee.  It should, again, be dismissed.

25

26

27

28

## C.   **Plaintiffs Fail to State a Claim for Violation of Their Rights to Free Assembly and Association.**

Plaintiffs' new allegations add nothing to the allegations purporting to support their claim that the University violated their rights to free assembly and association. (TAC ¶¶ 61-66.)  Plaintiffs allege that they "seek to associate with "like-minded persons, as well as persons who are aspiring to add spirituality to their lives.  (*Id.* ¶ 63.)  They continue to contend that the purpose of this association is to "reinforce the common goals shared by the plaintiffs, but also seek[s] to stimulate UCLA students, faculty, administrators, and employees to adopt such beliefs and incorporate such practices in their daily lives."  (*Id.*)  And they continue to assert, as they did in the FAC and the SAC, that the University's four day per year restriction is not the least restrictive means of achieving a compelling state interest, and also fails as a time, place, and manner restriction on their right to associate.  (*Id.* ¶¶ 65-66.)

In order to receive protection under the First Amendment's right to association, an activity must either qualify as a form of "intimate association" or as a form of "expressive association."  *Stanglin,* 490 U.S. at 25.  Plaintiffs have conceded that they do not assert a deprivation of intimate association.[12]  (Pls.' Opp. to Mot. to Dismiss FAC, Dkt. 26 at 22 n.14); (June 8 Order at 9.)  Plaintiffs' claim thus depends entirely on whether or not they have stated a claim for violation of the right to expressive association.

Plaintiffs attempt to bolster their expressive association claim by alleging that they intend to associate for expressive purposes unrelated to food distribution. Previously, Plaintiffs alleged that they sought "to assemble and engage in religious

---

[12] Even if Plaintiffs had not conceded any intimate association claim, the TAC – like the SAC and the FAC – does not allege facts demonstrating the University's interference with an "intimate association," which concerns "personal decisions about marriage, childbirth, raising children, cohabiting with relatives, and the like."  *Pickup v. Brown*, 740 F.3d 1208, 1233 (9th Cir. 2014) (citing *Roberts*, 468 U.S. at 617-19).  The administration of a lunch program on the grounds of a public university that is open to the public does not implicate such intimate, personal decisions.  *See Fleisher v. City of Signal Hill*, 829 F.2d 1491, 1500 (9th Cir. 1987).

exercise and expression through the distribution and sharing of sanctified food." (SAC ¶ 55.)  In the TAC, Plaintiffs add that they seek to assemble not only to "shar[e] their sanctified food" but also for "chanting, literature distribution, [and] speaking." (TAC ¶ 64.)  Plaintiffs also add new allegations that "plaintiffs seek to associate with like-minded persons, as well as persons who are aspiring to add spirituality to their lives."  (TAC ¶ 63.)  Plaintiffs do not, however, add any new allegations that they were restricted from engaging in chanting, literature distribution, and speaking at UCLA.  Nor could they, when the record is clear that UCLA affirmatively invited them to engage in such activities, consistent with UCLA's existing time, place, and manner restrictions.  (*See* Carroll Decl. ¶ 6, Exh. C.)  The only alleged restriction on Plaintiffs' expressive association rights remains the four-times-a-year restriction for food events and the related fee.  As established above, this restriction does not violate any expressive right under the Free Speech or Free Exercise Clauses.  Therefore, the restriction does not violate Plaintiffs' right to expressive association—even if Plaintiffs sought to couple their food event with other kinds of expressive activity. *See Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1097 (D. Ariz. 1999) (holding that because Defendants imposed restrictions only on constitutionally unprotected conduct, "[w]hatever constitutionally protected expression might occur . . . would not be impermissibly infringed" by Defendants and Defendants "[a]ccordingly . . . do[] not impermissibly infringe on Plaintiffs' freedom to engage in expressive association and cannot be enjoined on this basis."), *aff'd* 238 F.3d 430 (9th Cir. 2000).

As this Court has previously observed, "to come [within the First Amendment's protection of expressive association] ambit, a group must engage in some form of expression."  (Sept. 26 Order at 7 (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)).)  The right to expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  "The constitutional right to free association for expressive purposes is an *instrumental* one; expressive association is protected as an indispensable means of preserving *other individual liberties*.'" *Villegas v. City of Gilroy*, 363 F. Supp. 2d 1207, 1219 (N.D. Cal. 2005) (quoting 16A Am. Jur. 2d Const'l Law § 539), *aff'd,* 484 F.3d 1136 (9th Cir. 2007), *and aff'd sub nom. Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008) (en banc); *see also Salvation Army v. Dep't of Cmty. Affairs of N.J.*, 919 F.2d 183, 199 (3d Cir. 1990) ("[T]here is no constitutional right to associate for a purpose that is not protected by the First Amendment.").  For this reason, the Supreme Court has recognized that "[w]hen . . . these intertwined rights arise in exactly the same context, it would be anomalous for a restriction on speech to survive constitutional review under our [free speech] test only to be invalidated as an impermissible infringement of expressive association."  *Hastings*, 561 U.S. at 681.  As a result, "[c]ourts 'evaluate free speech and free assembly claims under the same analysis.'"  *Braun v. Terry*, 148 F. Supp. 3d 793, 801 (E.D. Wis. 2015) (quoting *Stagman v. Ryan*, 176 F.3d 986, 999 n.3 (7th Cir. 1999)).  Similarly, a plaintiff cannot state an expressive association claim based on Free Exercise if there is no independent violation of a plaintiff's Free Exercise rights.  *Salvation Army*, 919 F.2d at 199-200 (holding that "the derivative right to religious association could not entitle an organization to challenge state actions . . . that are not directly addressed to religious association" because "[w]e would not expect a derivative right to receive greater protection than the right from which it was derived.").

As demonstrated in the preceding sections, Plaintiffs' claims for violation of Free Speech and Free Exercise remain deficient.  As in its earlier iterations, Plaintiffs' expressive association claim remains deficient.  *See Fort Lauderdale Food Not Bombs*, No. 15-cv-60185 at*26 (finding no violation of First Amendment freedom of association where "[t]he Ordinance and Park Rule at issue here are not restricting Plaintiffs' ability to gather together, or associate, but simply requiring them to obtain a

permit and follow a detailed protocol if they want to share food at these outdoor gatherings.").

**D.      Further Leave To Amend Should Be Denied.**

A court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Allen*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotation marks omitted); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  In its Order granting Defendant's motion to dismiss the SAC, the Court granted Plaintiffs "one last chance to amend." (Sept. 26 Order at 8.)  Because Plaintiffs' fourth attempt at pleading their claims has failed to remedy the deficiencies that resulted in the Court's previous dismissal orders, the Third Amended Complaint should be dismissed, with prejudice.

**V.      CONCLUSION**

For the foregoing reasons, Defendant Interim Vice Chancellor of Student Affairs Monroe Gorden, Jr. respectfully requests the Court to dismiss the Third Amended Complaint in its entirety, without leave to amend.

Dated:  November 6, 2017

SCHIFF HARDIN LLP


By: /s/ *William J. Carroll*
     William J. Carroll

Attorneys for Monroe Gorden, Jr.
Interim Vice Chancellor of Student
Affairs, sued in his official capacity

SF\322016370.1